UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO
Bankruptcy Judge Joseph G. Rosania, Jr.

| | |
|---|---|
| In re:<br><br>RYAN PATRICK MURPHY,<br>SSN: xxx-xx-7318,<br><br>Debtor. | Case No. 25-10989-JGR<br>Chapter 13 |

### ORDER DENYING MOTION TO VACATE CONFIRMATION ORDER

THIS MATTER is before the Court on the Motion to Vacate or Reconsider Order Confirming Chapter 13 Plan Pursuant to Bankruptcy Rule 9024 and F.R.C.P. 60(b) ("Motion to Vacate"), filed by Wendy Rea ("Rea") on August 4, 2025 (Doc. 37)[1], Debtor's Response to Motion to Vacate or Reconsider Order Confirming Plan filed on August 14, 2025 (Doc. 40), and Creditor's Brief in Support of Motion to Vacate Confirmation filed on August 27, 2025 (Doc. 43).

### PROCEDURAL BACKGROUND

Ryan Patrick Murphy ("Debtor") filed a petition for relief under Chapter 13 on February 27, 2025. This is the Debtor's second chapter 13 bankruptcy case. He previously filed Case No. 17-10731-EEB on January 31, 2017. In the prior case, the Debtor successfully completed his 60-month chapter 13 plan and received a discharge under 11 U.S.C. § 1328(a) on April 6, 2022. The prior case was closed on May 23, 2022.

The current case was filed more than two years after the entry of the discharge order in the prior case. Accordingly, the debtor is eligible for discharge pursuant to 11 U.S.C. § 1328 (f)(2).

The schedules filed with the Debtor's petition in the current case disclose minimal assets valued in the total amount of $23,315.00 consisting of a 2016 Mazda MX-5 Miata valued at $16,600.00 (subject to a loan in the amount of $23,036.00); household goods and furnishings valued at $1,300.00; 1 mountain bike valued at $1,000.00; clothes valued at $200.00; bank account balances of $4,215.00; a 403(B) retirement account in an unknown amount; and 2024 potential tax refunds in an unknown amount.

The Debtor listed gross monthly income of $6,955.42 and, after payroll deductions of $1,841.75, net monthly pay of $5,113.67. The Debtor listed monthly expenses in the amount of $4,963.00, leaving net disposable monthly income of $150.67.

---

[1] Prior to filing the Motion to Vacate, Rea filed an Objection to Confirmation of the Plan on July 28, 2025 (Doc. 33).

The Debtor's current monthly income was below the applicable median income as determined using Official Form 122C-1, Chapter 13 Statement of Your Current Monthly Income and Calculation of Commitment Period (Doc. 5). Therefore, the Debtor was eligible to propose a chapter 13 plan with a 36-month term and disposable income was not required to be calculated.

The Debtor filed his chapter 13 plan with the petition. The plan valued nonexempt assets in the amount of $600.00. The Debtor proposed a longer 60-month plan with monthly payments in the amount of $150.00, totaling $9,000.00. After the deduction of administrative expenses, the plan provided for the payment of $5,400.00 to unsecured creditors.

The trustee filed an objection to confirmation requiring the Debtor to provide his 2024 income tax returns. The objection was withdrawn after the Debtor complied with the request. The plan satisfied 11 U.S.C. § 1325(a) and was confirmed on April 23, 2025 (Doc. 16).

A claims bar date of May 8, 2025, was established in the case. Nine Proofs of Claim were timely filed. A claim secured by the Debtor's vehicle was filed in the amount of $22,675.10. Seven general unsecured claims were filed totaling $30,257.61. One general unsecured student loan claim in the amount of $147,022.34 was filed. Timely filed unsecured claims totaled $177,279.95.

Under the plan, the secured vehicle claim is being paid directly to the creditor according to the terms of note. Unsecured creditors, including the student loan, are proposed to receive pro rata dividends of approximately 3% of the amount of each respective claim. Pursuant to 11 U.S.C. § 1328(a)(2) which excepts debts subject to 11 U.S.C. § 523(a)(8) from discharge, the unpaid balance of the student loan will survive the bankruptcy case.

On June 9, 2025, Rea filed two Proofs of Claim. Claim 10-1 was filed by Rea as a codebtor on behalf of MOHELA for a student loan in the amount of $89,777.07. Claim 11-1 was filed by Rea in the same amount arising from an indemnification agreement entered in a prior marital dissolution case. Proof of Claim 11-1 did not indicate that the claim was entitled to priority treatment under 11 U.S.C. § 523(a)(5) as a domestic support obligation.

On July 28, 2025, Rea filed an Objection to Confirmation (Doc. 32). Rea's Motion to Vacate was filed shortly thereafter on August 4, 2025.

## REA'S OBJECTION TO CONFIRMATION AND MOTION TO VACATE

Rea's objection centers on the treatment of a student loan consolidation loan obtained by the Debtor in 2008 and co-signed by Rea while the parties were married. In their 2009 marital dissolution, the separation agreement contained a hold harmless agreement with respect to the student loan. In her objection, Rea raises the following

2

points:

- Rea was not listed as a creditor or co-debtor and did not receive notice of the Debtor's bankruptcy filing.

- The student loan is treated as a generic Class 4 unsecured claim.

- The indemnification agreement from the marital dissolution is not listed as a claim.

- The Debtor may have failed to disclose assets and resides in a luxury apartment.

- Rea claims she was not listed as a creditor in the Debtor's prior bankruptcy filing but only as a co-debtor for the consolidated student loan. Notice of the prior bankruptcy case was sent to her parents' address and to her former divorce attorney, but she did not receive notice of the case and was not able to participate.

- Rea claims the Debtor purchased his current vehicle shortly before the bankruptcy case filing, incurring new debt while failing to make payments on the consolidated student loan, evidencing a lack of good faith.

- Rea claims she will face undue financial hardship as a result of the student loan accruing interest during the term of the bankruptcy plan.

- Rea claims the hold harmless agreement is excepted from discharge under 11 U.S.C. § 523(a)(15).

Shortly after filing her objection to confirmation, Rea filed the Motion to Vacate citing Fed.R.Bankr.P. 9024 and Fed.R.Civ.P. 60(b). Rea claims she was never served with notice of the confirmation hearing and not provided a copy of the plan. Rea claims she was denied notice and the opportunity to be heard, resulting in a denial of due process, constituting grounds for relief under Fed.R.Civ.P. 60(b).

## THE DEBTOR'S RESPONSE

The Debtor listed the MOHELA student loan in his Schedules in the amount of $86,580.00. The Debtor concedes that Rea should have been listed as a codebtor, but claims the omission was due to excusable oversight. Nevertheless, the Debtor argues that Rea is not a creditor in the current bankruptcy case because her claim arising from the hold harmless agreement contained in the marital dissolution action was a property settlement claim discharged in the prior Chapter 13 bankruptcy case. He notes the parties expressly waived support in the martial dissolution action.

3

**The Prior Bankruptcy Case**

The Debtor acknowledges that Rea was not listed as a creditor in the prior bankruptcy but asserts she was afforded notice of the case because she was properly listed as a codebtor on the student loan claim. The Debtor argues his first bankruptcy case was filed approximately nine years after the parties physically separated and there were no children of the marriage or other issues that would require them to remain in contact. Notice of the prior bankruptcy was provided to the two addresses the Debtor believed were most likely to reach Rea—her parents' house, and to her former divorce attorney's office. The Debtor cites *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950) for the proposition that due process was satisfied because the notice was "reasonably calculated, under all the circumstances, to apprize interested parties of the pendency of the action and afford them an opportunity to present their objections."

The Debtor points to 11 U.S.C. § 1327(a), which provides: "The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." Further, Rea's claim, although excepted from discharge in a chapter 7 bankruptcy proceeding pursuant to 11 U.S.C. § 523(a)(15), is discharged in a chapter 13 case pursuant to 11 U.S.C. § 1328(a)(2).

The Debtor contends Rea's claim arising from the hold harmless agreement was discharged in the prior chapter 13 bankruptcy. Accordingly, she is not a creditor in the pending case and lacks standing to object to confirmation of the Debtor's plan or to seek to vacate the confirmation order.

**Due Process Violation or Fraud Justifying Revocation**

The Debtor argues that even if Rea's claim was not discharged in the prior bankruptcy, she cannot establish a due process violation or fraud as required for relief under Fed.R.Bankr.P. 9024, incorporating Fed.R.Civ.P. 60(b). The Debtor relies on *United Student Aid Funds Inc. v. Espinosa*, arguing Rule 60(b)(4) relief is not a substitute for a timely appeal. Further: "A judgment is not 'void' simply because it contains a legal or procedural error; rather, this extraordinary remedy is reserved for the 'rare instance' where a judgment is based on a jurisdictional error or a due process violation that deprived a party of 'notice or the opportunity to be heard.'" *See Espinosa*, 559 U.S. 260, 271 (2010). The Debtor argues Rea cannot establish a violation of due process to cause the confirmation order to be void under Fed.R.Civ.P. 60(b)(4).

The Debtor argues Rea's motion must be construed as a complaint to revoke an order confirming a plan under Fed.R.Bankr.P. 9024(a)(3) and 11 U.S.C. § 1330(a). As such, the order of confirmation can only be revoked if it was procured by fraud, regardless as to whether Rea had notice and the opportunity to be heard.

The Debtor asserts that no intrinsic or extrinsic fraud or intentional debtor misconduct led to the entry of the confirmation order. The Debtor complains that from

4

2017 through 2022, Rea made no effort to participate or assert claims in the prior bankruptcy. The Debtor contends that Rea was not listed as a creditor in the current bankruptcy because any claim arising from the hold harmless agreement was discharged in the prior bankruptcy.

Further, the omission of her codebtor status for the student loan arose from an inadvertent error by counsel's office when preparing the Debtor's schedules when an annotation on the Debtor's credit report listing the debt as "joint" was missed.

**Good Faith.**

The Debtor claims his bankruptcy case and chapter 13 plan were filed in good faith in an effort to reorganize his financial affairs and place him in a position to address the non-dischargeable student loan in the future. Specifically, he argues the filing of the bankruptcy prevented a default on the student loans, including the cosigned student loan, and that his employment allows him to apply for public service forgiveness on the other federal student loans, placing him in a position to address the co-signed private student loan in the future.

The Debtor disputes Rea's claim that the filing of the bankruptcy was a means to avoid complying with the hold harmless agreement and is indicative of bad faith. The agreement, although excepted from discharge under 11 U.S.C. § 523(a)(15), is dischargeable in chapter 13. Discharge of the agreement under 11 U.S.C. § 1328(a) is authorized by the Bankruptcy Code and a legal right to which the debtor is entitled.

## REA'S REPLY

Rea reiterates her argument that she did not receive notice of the Debtor's prior bankruptcy. As a result, she was denied the opportunity to participate in the case and the failure to identify her claim arising from the hold harmless agreement caused it to be excepted from discharge, citing *In re DeVore*, Bankruptcy No. 01-03558, Chapter 13, 2002 Bankr. LEXIS 443 (Bankr. N.D. Iowa May 3, 2002).

Rea then argues for the first time that her claim under the hold harmless agreement should be construed as a domestic support obligation excepted from discharge under 11 U.S.C. § 523(a)(5).

In determining whether a debt constitutes a domestic support obligation, Rea argues courts apply a functional analysis and cites *Seixas v. Booth (In re Seixas)*, 239 B.R. 398, 402 (B.A.P. 9th Cir. 1999). She argues:

1. The indemnification provision served an ongoing support/maintenance function and was intended to protect her ongoing financial stability without being burdened by the educational debt from which she received no benefit.

5

2. The indemnification provision was based on the parties' relative financial provisions and while she was fully employed and the Debtor was not, he possessed a graduate degree which would allow his future earnings to cover repayment of the loan.

3. The indemnity provision corrected the financial inequity of the student loan by assigning payment to the spouse receiving the educational benefit.

4. The indemnification provision was intended to protect Rea from financial hardship.

Again, Rea argues that if the claim is not a domestic support obligation under 11 U.S.C. § 523(a)(5), it would nevertheless be excepted from discharge under 11 U.S.C. § 523(a)(15). She also contends that the codebtor stay imposed under 11 U.S.C. § 1301 does not protect her because the student loan debt is not provided for in the plan. Finally, she argues that the Debtor's current income causes him to be an above-median classification.

## ANALYSIS

This dispute illustrates the difficulties faced by debtors and creditors when bankruptcy relief involves student loans and debts arising from marital dissolutions.

The Court has subject matter jurisdiction over the dischargeability claims and the claims objecting to, or seeking reconsideration of, the confirmation of the Debtor's plan brought in this adversary proceeding under 28 U.S.C. § 1334, 28 U.S.C. § 157(a), and 28 U.S.C. § 157(b)(1), (b)(2)(A), (b)(2)(B), (b)(2)(I), (b)(2)(L), and (b)(2)(O) and this is a core proceeding.

**Marital Dissolution Obligations**

The notice of the current bankruptcy established May 8, 2025, as the claims bar date. Rea was not listed as a creditor or a codebtor in the current bankruptcy case and did not receive notice of the bar date. After the deadline had passed, on June 9, 2025, Rea filed Proof of Claim 11-1 in the amount of $89,777.07. Rea attached to the Proof of Claim a Stipulated Judgment dated October 9, 2009, in the martial dissolution action, which included a hold harmless agreement with respect to the student loan. The Proof of Claim did not indicate the claim was entitled to priority treatment as a domestic support obligation pursuant to 11 U.S.C. § 523(a)(5).

The twin pillars of bankruptcy law are discharge of debts and equality of distributions. Nevertheless, bankruptcy law recognizes that certain debts are, or can be, excepted from discharge, and that certain classes of claims are entitled to preferential treatment.

Claims arising from a marital dissolution fall into two general categories: support obligations and property settlements. Domestic support obligations are automatically excepted from discharge pursuant to 11 U.S.C. § 523(a)(5) and defined in 11 U.S.C. §

6

101(14A), which provides:

> The term "domestic support obligation" means a debt that accrues before, on, or after the date of the order for relief in a case under this title, including interest that accrues on that debt as provided under applicable nonbankruptcy law notwithstanding and any other provision of this title, that is—
>
> (A) owed to or recoverable by—
> (i) a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; or
> (ii) a governmental unit;
>
> (B) in the nature of alimony, maintenance, or support (including assistance provided by a governmental unit) of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated;
>
> (C) established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of—
> (i) a separation agreement, divorce decree, or property settlement agreement;
> (ii) an order of a court of record; or
> (iii) a determination made in accordance with applicable nonbankruptcy law by a governmental unit; and
>
> (D) not assigned to a nongovernmental entity, unless that obligation is assigned voluntarily by the spouse, former spouse, child of the debtor, or such child's parent, legal guardian, or responsible relative for the purpose of collecting the debt.

Courts generally look to the state court ruling issued in the marital dissolution action to determine whether the debt qualifies as a domestic support obligation but are not bound by the labels attributed to the obligation.

> When determining whether an obligation is in the nature of alimony, maintenance, or support, this court conducts a "dual inquiry" looking first to the intent of the parties at the time they entered into their agreement, and then to the substance of the obligation. See *Sampson*, 997 F.2d at 723; *Sylvester v. Sylvester*, 865 F.2d 1164, 1165 (10th Cir. 1989). The nature of the obligation is not restricted to the parties' label in the settlement agreement and is a question of federal law. *Sylvester*, 865 F.2d at 1166; see *Young v. Young (In re Young)*, 35 F.3d 499, 500 (10th Cir. 1994) (finding that shared

7

> intent "is not limited to the words of the settlement agreement, even if unambiguous" and stating that "the bankruptcy court is required to look behind the words and labels of the agreement in resolving this issue.")

*Taylor v. Taylor (In re Taylor)*, 737 F.3d 670, 676-77 (10th Cir. 2013). The party asserting that the claim is a domestic support obligation bears the burden of proof. *Id.*

In addition to being excepted from discharge, domestic support obligations are entitled to the highest priority treatment pursuant to 11 U.S.C. § 507(a)(1).

In other words, domestic support obligations are not subject to the automatic stay, are not discharged and survive the bankruptcy, and are paid ahead of all other creditors. The same is not true for other marital dissolution obligations.

In the objection to confirmation of the Chapter 13 plan, Rea claims "[t]his debt may be non-dischargeable under 11 U.S.C. § 523(a)(15) as it arises from a divorce judgment and includes a hold harmless obligation." In her request for relief, Rea seeks a determination that her claim is nondischargeable under 11 U.S.C. § 523(a)(15).

Rea did not receive notice of the current bankruptcy case filing or of the claims bar date. Proof of Claim 11-1 will be allowed as filed. The Proof of Claim did not assert that the claim arising from the hold harmless agreement was a domestic support obligation excepted from discharge under 11 U.S.C. § 523(a)(5) and entitled to priority pursuant to 11 U.S.C. § 507(a)(1).

The stipulated judgment attached to Proof of Claim 11-1 places the hold harmless agreement with respect to the student loan in the division of assets and debts section. The spousal support section includes a permanent and irrevocable waiver of spousal support and Rea's reply acknowledges at the time the stipulated judgment was entered, she was fully employed, and the Debtor was not. While the Court is not bound by the labels assigned in the stipulated judgment, it does not appear the parties intended the provision to operate as support at the time the judgment was entered. The Court also notes that Rea's claim that the hold harmless agreement may be a domestic support obligation was first raised in her reply nearly seventeen years after the entry of the stipulated judgment.

Rea has consistently argued, and the Court finds that because the hold harmless agreement was created in the marital dissolution but was not a domestic support obligation, it is allowed as an unsecured claim subject to the provisions of 11 U.S.C. § 523(a)(15).

Prior to the 2005 enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA"), claims arising from a marital dissolution that did not qualify as domestic support obligations were not automatically excepted from discharge. Instead, creditors were required to commence an adversary proceeding to determine the non-

dischargeability of the obligation. Complaints raising claims under 11 U.S.C. § 523(a)(15) were subject to 11 U.S.C. § 523(c) and Fed.R.Bankr.P. 4007, imposing a 60-day deadline from the date of the Debtor's first scheduled meeting of creditors. If a challenge was not timely filed, the debt was discharged.

To complicate matters further, before the BAPCPA amendments, 11 U.S.C. § 523(a)(15) included a balancing test measuring the impact of the discharge. The section provided that individuals were not discharged from debts:

> not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless
>
> (A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or
>
> (B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor.

The discharge exception proved difficult as it involved a balancing of equities and often resulted in bankruptcy courts relitigating marital disputes.

The BAPCPA amendments simplified the analysis. Currently, 11 U.S.C. § 523(a)(5) and 11 U.S.C. § 523(a)(15) operate together to except all debts arising from a marital dissolution from discharge in a chapter 7,11 or 12 case.

Marital obligations that are not domestic support obligations are excepted from discharge in cases filed under chapter 7, 11, and 12 pursuant to 11 U.S.C. § 523(a)(15), which excepts from discharge debts "to a spouse, former spouse, or child of the debtor and not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, or a determination made in accordance with State or territorial law by a governmental unit."

The exception to the rule is found in chapter 13, where discharge of debts is governed by 11 U.S.C. § 1328. Subsection (a)(2) specifies certain types of claims that are not discharged in chapter 13: "of the kind specified in section 507(a)(8)(C) or in paragraph (1)(B), (1)(C), (2), (3), (4), (5), (8), or (9) of section 523(a)."

9

Domestic support obligations subject to 11 U.S.C. § 523(a)(5) are not discharged. By omission from 11 U.S.C. § 1328(a)(2), other marital dissolution obligations covered by 11 U.S.C. § 523(a)(15) are discharged in chapter 13. This is true regardless of whether the holder of the claim participates in case. 11 U.S.C. § 1327(a) provides:

> The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.

The other distinction between domestic support obligations and other marital dissolution obligations subject to 11 U.S.C. § 523(a)(15) is that those claims are not entitled to priority treatment and are appropriately classified as general unsecured claims.

The Debtor argues that Rea's claim arising from the hold harmless agreement was properly treated as a 11 U.S.C. § 523(a)(15) claim and that it was discharged in the prior bankruptcy case. Rea was provided notice of the bankruptcy and a copy of the plan at the addresses in the Debtor's possession that were most likely to afford her the opportunity to participate in the bankruptcy case.

Rea argues the claim survived because she did not receive notice of the case and the treatment of her claim was not specified. She claims she never received notice of the first bankruptcy case from either her parents or former divorce attorney. The Court has a hard time believing her parents would not have contacted her concerning a legal notice pertaining to a bankruptcy case of her ex-spouse.

If it is determined that notice was sufficient, the debt would have been discharged in the prior bankruptcy. However, the issue of whether the notice of the prior bankruptcy satisfied the requirements of *Mullane v. Cent. Hanover Bank & Trust Co.* does not need to be addressed by the Court at this time. Proof of Claim 11-1, arising from the hold harmless agreement, qualifies as a 11 U.S.C. § 523(a)(15) claim and is being allowed in the current case. If the Debtor successfully completes his plan, it will be discharged. If the plan is not successfully completed, the parties may seek a determination as to whether the claim was discharged in the prior bankruptcy.

**Student Loan Claims**

Pursuant to 11 U.S.C. § 523(a)(8), student loan debt is not discharged

(8) unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents, for—

  (A)
    (i) an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or
    (ii) an obligation to repay funds received as an educational benefit, scholarship, or stipend; or

10

      (B) any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual;

    The determination of whether a student loan can be excepted from discharge as an undue hardship requires the filing of an adversary proceeding.  See *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260 (2010).

    Although excepted from discharge, student loans are not entitled to priority treatment under 11 U.S.C. § 507(a).  This creates a situation where some debtors have proposed chapter 13 plans that separately classify student loan claims in order to treat the claims preferentially because any unpaid balance will survive the bankruptcy.  One example is providing for the continued payment of student loans outside the plan as long-term debts.

    In the District of Colorado, the standing chapter 13 trustees take the position that plans providing for the treatment of student loan claims differently than other unsecured claims are impermissible.  See *In re Kubeczko,* No. 12-13766 HRT, 2012 Bankr. LEXIS 3081 (Bankr. D. Colo. July 6, 2012).  Absent exceptional circumstances, student loans are treated as general unsecured claims sharing pro rata in any distributions made to the class.

    In many cases, debtors find themselves owing more on a student loan claim after the completion of the plan because the interest that continues to accrue on the nondischargeable student loan debt exceeds the payments made on the claim through the plan.

    The Debtor listed two student loan claims.  Both claims were scheduled as being owed to MOHELA with an address of 633 Spirit Drive, Chesterfield, MO 63005.  The first claim was to MOHELA in the amount of $147,022.00 was incurred in December 2022.  The second claim to MOHELA in the amount of $86,580.00 was incurred in April 2008.  The Debtor's plan, as is the common practice in the District of Colorado, provides that student loans are classified as general unsecured claims.

    May 8, 2025, was the claims bar date established in the Debtor's current case.  The U.S. Department of Education/MOHELA timely filed Proof of Claim 1-1 in the amount of $147,022.34.  MOHELA did not file a Proof of Claim for the second student loan.  Rea filed Proof of Claim 10-1 on behalf of MOHELA on June 9, 2025, in the amount of $89,777.07.  As referenced above, Rea is a codebtor on the claim.

    11 U.S.C. § 501(b) provides: If a creditor does not timely file a proof of such creditor's claim, an entity that is liable to such creditor with the debtor, or that has secured such creditor, may file a proof of such claim.  Fed.R.Bankr.P. 3005(a) provides that the claim filed on behalf of the creditor must be filed within 30 days after the creditor's time to file expires.  The thirtieth day after May 8, 2025, fell on Saturday, June 7, 2025.  Fed.R.Bankr.P. 9006(a)(3)(A) provides that the time to file the proof of claim was extended to Monday, June 9, 2025.  Because Proof of Claim 10-1 was timely filed, it is allowed as a general unsecured claim.

## VACATING THE CONFIRMATION ORDER

The Federal Rules of Civil Procedure provide that a litigant subject to an adverse judgment may file a motion seeking relief from the judgment pursuant to Fed.R.Civ.P. 60(b), made applicable to bankruptcy cases pursuant to Fed.R.Bankr.P. 9024.

Rea is acting as a pro se litigant and the Court has liberally construed and held her to a less stringent standard than formal pleadings drafted by lawyers. *See Haines v. Kerner*, 404 U.S. 519, 520-521, 30 L. Ed. 652, 92 S. Ct. 594 (1972).

Rule 60(b) provides six enumerated grounds for relief:

(b) Grounds for Relief from a Final Judgment, Order, or Proceeding. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

    (1) mistake, inadvertence, surprise, or excusable neglect;

    (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

    (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

    (4) the judgment is void;

    (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

    (6) any other reason that justifies relief.

Fed.R.Civ.P. 60(b), made applicable to bankruptcy proceedings by Fed.R.Bankr.P. 9024.

"Relief from judgment under Rule 60(b) falls within the discretion of the Court, but such relief is extraordinary, and should only be granted in exceptional circumstances." *Richter*, 481 B.R. 682 (citing *LaFluer v. Teen Help*, 342 F.3d 1145, 1153 (10th Cir. 2003); *Amoco Oil Co. v. United States Department of Environmental Protection*, 231 F.3d 694, 697 (10th Cir. 2000); *Bud Brooks Trucking, Inc. v. Bill Hodges Trucking Co., Inc.*, 909 F,2d 1437, 1440 (10th Cir. 1990)).

Rea argues the confirmation order should be vacated under Fed.R.Civ.P. 60(b)(4) because the failure to provide notice of the Debtor's bankruptcy denied her the opportunity to be heard and constitutes a denial of due process.

The Debtor, citing *Espinosa*, argues Fed.R.Civ.P. 60(b)(4) cannot be used as a substitute for a timely appeal and that Rea's remedy is limited to seeking revocation of an

order of confirmation pursuant to 11 U.S.C. § 1330(a). *Espinosa*'s holding is not so limited.

*Espinosa* involved a provision in a chapter 13 plan which provided for the hardship discharge of a student loan without a separate judicial determination in an adversary proceeding. The student loan lender received notice of the bankruptcy but did not object to confirmation of the plan and later sought relief from judgment under Fed.R.Civ.P. 60(b)(4).

In *Espinosa*, the student loan lender received notice of the bankruptcy. Here, it is undisputed that Rea was not provided notice of the Debtor's current bankruptcy. *Espinosa* holds: "Rule 60(b)(4) applies only in the rare instance where a judgment is premised either on a certain type of jurisdictional error or on a violation of due process that deprives a party of notice or the opportunity to be heard." 559 U.S. at 271. The Debtor failed to list Rea in his bankruptcy schedules, and she did not receive notice of the bankruptcy case. The lack of notice prevented consideration of her objection prior to the of the order confirming the Debtor's chapter 13 plan.

The primary grounds raised in Rea's objection concerned the failure to provide for the cosigned student loan and the failure to list her as a creditor.

Proof of Claim 10-1 filed on behalf of MOHELA is allowed. The treatment of the claim as a general unsecured claim is appropriate and comports with the standards and practices utilized in chapter 13 cases in the District of Colorado. Unless an adversary proceeding is filed and the Debtor proves undue hardship the student loan will be excepted from discharge pursuant to 11 U.S.C. § 523(a)(8).

Proof of claim 11-1 filed by Rea arising from the hold harmless agreement created in the 2009 marital dissolution proceeding is allowed. Because the claim was not filed as a domestic support obligation entitled to priority treatment under 11 U.S.C. § 507(a)(1), it is properly treated as an 11 U.S.C. § 523(a)(15) claim. Regardless of whether the claim was discharged in the prior bankruptcy, it is allowed as a general unsecured claim subject to discharge pursuant to 11 U.S.C. § 1328(a) upon successful completion of the Debtor's plan in the current case.

During the pendency of the Debtor's bankruptcy case Rea is protected from collection through the codebtor stay imposed under 11 U.S.C. § 1301. As argued in the Debtor's response, the successful completion of the plan in the current case will place the Debtor in a better position to pay the non-dischargeable student loan in the future.

The additional grounds raised in the objection concern bad faith and the discharge of the hold harmless agreement.

The Court finds no indicia of bad faith in the filing of the Debtor's bankruptcy case or in the confirmed chapter 13 plan. Debtors routinely engage in pre-bankruptcy planning which can include ceasing payment on pre-petition debts, in this case the student loan. The payment on the used 2016 vehicle purchased by the Debtor is $429 per month, lower

than the standard IRS allowance of $619. The other expenses listed by the Debtor do not strike the Court as unreasonable and the trustee did not object to the expenses or confirmation of the plan. Additionally, the chapter 13 trustees in the district of Colorado are diligent in examining whether a debtor has proposed a confirmable chapter 13 plan.

Rea did not allege that the confirmation order is subject to revocation for fraud under 11 U.S.C. § 1330(a).

Sufficient grounds have not been advanced to warrant vacating the confirmation order.

## CONCLUSION

Chapter 13 affords debtors the opportunity to reorganize their personal financial affairs. Unlike other chapters, chapter 13 provides for the discharge of obligations arising from marital dissolution that do not qualify as domestic support obligations. Without determining whether Rea's claim was discharged in the prior bankruptcy, upon successful completion of the plan in the current case, the Debtor's obligation under the hold harmless provision will be discharged. Absent the filing of an adversary proceeding, the obligation on the student loan will not be discharged. The Debtor remains liable for the cosigned student loan obligation, which in some ways mitigates the discharge of the hold harmless provision. The Debtor's bankruptcy case and the plan were filed in good faith. The Debtor's plan satisfied the requirements of 11 U.S.C. § 1325(a). The plan provides for the treatment of Rea's claim and the cosigned student loan. It is

ORDERED Proof of Claim 10-1, filed by Rea for MOHELA is allowed as a general unsecured claim in the amount of $89,777.07 subject to the provisions of 11 U.S.C. § 523(a)(8). It is

FURTHER ORDERED that Proof of Claim 11-1, filed by Rea, is allowed as a general unsecured claim in the amount of $89,777.07 subject to the provisions of 11 U.S.C. § 523(a)(15). It is

FURTHER ORDERED that the Motion to Vacate or Reconsider Order Confirming Chapter 13 Plan Pursuant to Bankruptcy Rule 9024 and F.R.C.P. 60(b) (Doc. 37) is DENIED.

Dated this 28th day of January, 2026.

BY THE COURT:

Joseph G. Rosania, Jr.
United States Bankruptcy Judge